WILLIAM A. BRAMAN ET AL. V. ELYRIA (CITY) ET AL.

1. WHAT ACTS OF MUNICIPAL CORPORATIONS NOT WITHIN BURNS LAW LAN. R. L. 3999 (B. 1536-205; R. S. 2702).

No contract, agreement or other obligation involving the expenditure of money is entered into, within the meaning of Lan. R. L. 3999 (B. 1536-205; R. S. 2702), formerly called the Burns law, by the mere passage of a reso-lution declaring the necessity of a municipal improvement, the adoption of an ordinance authorizing the improvement and assessing the cost thereof, advertising for and receiving bids, and awarding the contract. All such acts are only preliminary to the contract, agreement or obligation re-ferred to.

2. CLERK'S CERTIFICATE UNDER BURNS LAW LAN. R. L. 3999 (B. 1536-205; R. S. 2702) IN TIME IF FILED BEFORE CONTRACT SIGNED, ETC.

The certificate of the municipal auditor or clerk that the money required to carry out a proposed municipal contract is in the treasury to the credit of the fund from which it is to be drawn, and is not appropriated for any other purpose, required by Lan. R. L. 3999 (B. 1536-205; R. S. 2702). formerly called the Burns law, is in time if filed before the contract is signed and the ordinance for the appropriation or expenditure of the money is passed.

ERROR.

**Metcalf & Cinniger,** for plaintiff in error, cited:

Sections 1693, 2702 Rev. Stat. (repealed, 96 O. L. 96); Comstock v. Nelsonville (Vil.), 61 Ohio St. 288 [56 N. E. Rep. 15]; Elster v. Springfield, 49 Ohio St. 82 [30 N. E. Rep. 274]; Ryan v. Hoffman, 26 Ohio St. 109; Cincinnati v. Holmes, 56 Ohio St. 104 [46 N. E. Rep. 514]; Lancaster v. Miller, 58 Ohio St. 558 [51 N. E. Rep. 52]; Bond v. Madi-sonville (Vil.), 1 Circ. Dec. 581 (2 R. 449).

**W. B. Johnson, Q. A. Gillmore** and **E. G. & H. C. Johnson,** for de-fendants in error.

## WINCH, J.

·June 17, 1903, the council of the city of Elyria passed a resolution declaring the necessity of paving and otherwise improving East avenue in said city, and on July 15, 1903, it adopted an ordinance for the improvement of said avenue in accordance with plans, profiles and specifications on file in the office of the city engineer, and provided that one-third of the cost and expense of said improvement, except the curbing, and the entire cost of alley and street intersections, should be assessed as a special assessment upon all the taxable property of the city, and that the remainder should be assessed as a special assessment upon the abutting property by the foot front, the assessment to be paid in ten annual installments. Thereafter it advertised for bids and received them, and on September 5, 1903, awarded the contract for the · work to the Ayers Asphalt paving company. On September 27, 1903, the city issued its certificate of indebtedness in the amount of the contract price to a local bank and borrowed that amount of money, which was placed in the city treasury to the credit of the proper fund, and the city clerk properly certified the fact and filed his certificate in his office. Thereupon the duly authorized officers of the city signed a contract with the Ayers company for the completion of the improvement, and the clerk of the city certified on the contract that the money to pay the amounts coming due thereunder was in the treasury of the city to the credit of the proper fund.

Upon October 11, 1903, plaintiffs in proper form brought their action in the common pleas court to restrain the defendants from proceeding with said improvement, the payment of any money on the contract and the issuing of bonds, and asking that said resolution, ordinance and contract be set aside.

The case was heard by the common pleas court and determined adversely to the plaintiffs, the court making a separate finding of facts and law, on which findings the case is now presented on error for review by this court.

The only question thus raised for the determination of this court is whether the city complied with what was formerly known as the Burns law, Sec. 2702 Rev. Stat. (repealed, 96 O. L. 96), now re-enacted with slight changes as Lan. R. L. 3999 (B. 1536-205; R. S. 2702), the part pertinent to this case reading as follows:

"No contract, agreement or other obligation involving the expenditure of money shall be entered into, nor shall any ordinance, resolution or order for the expenditure of money, be passed by the council or by any board or officer of a municipal corporation, unless the auditor

of the corporation, and if there is no auditor, the clerk thereof, shall first certify to council that the money required for the contract, agreement or other obligation, or to pay the appropriation or expenditure, is in the treasury to the credit of the fund from which it is to be drawn, and not appropriated for any other purpose, etc.''

It is conceded that no such certificate was made before the resolution of necessity was passed, the ordinance for the improvement and assessing its cost was adopted, bids advertised, and received, or the contract awarded. The certificate was made, however, before the contract was signed.

Was it made in time?

There has been no case decided by the Supreme Court of this state specially deciding the question here raised. There are two cases cited to us which contain language indicating that perhaps this certificate should have been made at least before the ordinance for improvement and assessment was adopted.

The case of Ryan v. Hoffman, 26 Ohio St. 109, involved the payment of money for land taken by the city of Cincinnati for the extension of a street, and the effect of Sec. 3 of the act of April 16, 1874 (71 O. L. 80) which provided that ''no ordinance or other order for the expenditure of money (which) shall be passed by the city council * * * shall take effect until the auditor of said city shall certify to the city council there is money in the treasury especially set apart to meet such expenditure.'' Judge Gilmore, on page 123 of the opinion in said case said: ''The ordinance condemning the land in question, is an ordinance for the expenditure of money,'' but the statute was held not to apply because the ordinance was passed before the law took effect.

In the case of Cincinnati v. Holmes, 56 Ohio St. 104 [46 N. E. Rep. 514], the validity of a contract for the improvement of a street in the village of Avondale was in question. Judge Minshall starts his opinion on page 110 with the statement:

''The principal and only question in the case is, whether what is known as the Burns law, section 2702 Revised Statutes, is applicable to the improvements authorized by the acts of the legislature under which the village of Avondale proceeded in this case.''

The court held that the special legislation under which the village proceeded provided an exception to the Burns law and that the latter law did not apply. But on pages 112 and 113 of the opinion we find the following statements:

''These acts, particularly the order of the council, that the improvement be made, fixes an indebtedness for the entire cost of the im-

provement, one-half as an assessment on the property benefited and the other half on the general taxpayers of the village. It is against the fixing of an indebtedness on the corporation without the money being in the treasury to meet it, that the Burns law is designed as a protection. * * * It may be said that the indebtedness is not created until a contract for the improvement is made. It is true that it does not exist in favor of any particular creditor; nevertheless, on making the order the successive steps—the advertisement for bids, action on them, the letting of the work and making of the required contract—all follow as a necessary sequence under the statute. If the council should refuse to take any of these steps without cause, it could be compelled by mandamus to do so. Hence, if the Burns law can have any application to this statute, according to its spirit it must apply to the order of the council that the improvement be made. It is this order that fixes and entails the indebtedness upon the corporation. It is in fact an order for the expenditure of money."

Such is also the argument of counsel for plaintiffs in this case, but in the absence of any binding statement of the law of the case by the Supreme Court, we have come to a contrary conclusion, which, to a slight extent, is sustained by a careful reading of the case of Elster v. Springfield, 49 Ohio St. 82 [30 N. E. Rep. 274], and Comstock v. Nelsonville (Vil.), 61 Ohio St. 288 [56 N. E. Rep. 15].

It therefore becomes necessary to construe Lan. R. L. 3999 (B. 1536-205), formerly Sec. 2702 Rev. Stat. (repealed, 96 O. L. 96), and determine at just what stage in the proceedings culminating in a contract for a municipal improvement, the clerk's certificate becomes necessary, and all subsequent proceedings without it void.

Certainly no "contract, agreement or other obligation involving the expenditure of money" was "entered into" by the passage of the resolution of necessity, the ordinance to improve and assess, the advertising or receiving bids.

Nor was such contract, etc., "entered into" when the contract was awarded. The statutes elsewhere provide how municipal authorities shall enter into contracts, and the formalities with reference thereto, without which the contract is void.

The certificate was therefore in time so far as the entering into a contract, agreement or other obligation is concerned.

But the law further provides that no "ordinance, resolution or order for the expenditure of money" shall be passed, until the certificate is made.

We have in this case to consider a resolution, the resolution of necessity; an ordinance, the improvement and assessment ordinance, and an order, the order awarding the contract.

All of these in one sense *concern* the expenditure of money, but certainly the resolution is not *for* it, because the whole proceeding may stop upon the hearing of objections to the improvement, and the expenditure of money will not *necessarily* be made because of the adoption of the resolution.

The same may be said of the ordinance—bids may be advertised for, but none received; or all bids received may be rejected; the ordinance may be repealed before *any* step is taken under it actually necessitating the expenditure of money. The passage of the ordinance in no wise binds the city to make the improvement, and after its passage, who is to see that the improvement is made? What interested party is there, who can compel the city to go ahead, advertise for bids and accept them? Sometimes when bids for such improvements come in they are so high and the city's financial condition so poor, or the times so bad generally, that the whole matter is then dropped. Who can interfere with the judgment of the city authorities then exercised? The mere passage of the ordinance creates no liability against the city, and therefore the ordinance cannot be said to be one for the expenditure of money. Without further steps being taken, no city official would, upon the passage of the ordinance be authorized to expend money.

The same may be said of 'the order awarding the contract. That order is simply an expression of opinion on the part of the council that a certain bid is the best and should be accepted; that a contract should *thereafter* be made with such bidder. It authorizes the making of a contract, but it is not a contract, agreement or obligation binding upon the city, until the contract authorized is executed, in behalf of the city, by the proper authorities. Suppose there were no Burns law, would the contractor claim that he could go ahead with the work immediately, without any further contract with the city, upon the mere awarding of the contract to him? We think not. Such action on the part of the council might be reconsidered and its award revoked before any contract was signed. Municipal corporations cannot enter into agreements with the same lack of formalities that characterizes the acceptance of propositions by individuals, and we are inclined to think that the right of all legislative bodies to reconsider their action before persons dealing with them have acted upon their action, should be recognized.

If we are right in our construction of the Burns law,, in the case of municipal improvements to be let by contract, the clerk's certificate

of money in the treasury to the benefit of the proper fund, unappropriated for any other purpose is not required until just before the contract is signed. While we reach this conclusion with doubt, from a mere interpretation of the words of the law, such doubt is removed when we consider the necessities of the case and the impracticability of making such improvements, should any other interpretation be given to the law.

The intention of the law is to prevent the entering into of improvident contracts;—improvident, because the payment of obligations is not foreseen when the obligations are incurred. Such intention is strictly complied with if the certificate is made before the final step is taken which makes a contract absolutely binding upon the municipality and absolutely requiring the expenditure of money. Such intention does not contemplate that all preliminary steps leading up to the making of such binding contract shall be void, unless the certificate is made before all such preliminary steps are taken; and at what stage in the proceedings are we to draw the line, except at the entering into the contract?

To take any other view of the case would fill our municipal treasuries with idle money for improvements finally abandoned and never made; would prevent obtaining bids upon which to determine how much money must be so certified; would delay municipal improvements, contrary to the spirit of the law; would involve loss of interest in the case of delayed improvements, would, in fact, as before stated, extend the scope of the law far beyond its plain and reasonable intent.

The judgment of the court of common pleas is affirmed.